IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| KENDALL DEANARD SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-106 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Kendall Deanard Scott appeals the decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

I.  **BACKGROUND**

Plaintiff is a single male, thirty-one years of age. R. at 51. He graduated from high school in a special education program and consistently ranked in the very bottom of percentile rankings on standardized tests throughout his schooling. R. at 31, 145, 147. He

never married, has always lived with his mother, and lost both of the unskilled jobs he attempted because his supervisors said he was too slow. R. at 25-48. Consistent with these indicators, the only full scale IQ scores in the record are dismal scores of 44 and 58, well within the range of scores indicating intellectual disability. R. at 277, 304.

Plaintiff protectively applied for DIB and SSI on August 2, 2011, alleging a disability onset date of April 30, 2008. Tr. ("R."), pp. 11, 123-135. The Social Security Administration denied Plaintiff's applications initially, R. at 53, 56, and on reconsideration, R. at 60, 63. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. at 71, and the ALJ held a hearing on June 5, 2013, R. at 23. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Stephanie Archer, a Vocational Expert ("VE"). Id. On June 18, 2013, the ALJ issued an unfavorable decision. R. at 11-18.

Applying the five-step sequential process required by 20 C.F.R. § 404.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since April 30, 2008, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

2. The claimant has the following severe impairment: learning disability (20 CFR 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant's work should involve mostly oral instructions and very basic written instructions. Further, he should avoid moderate exposure to workplace hazards. Although the claimant can have occasional interpersonal contact in the workplace, interacting with the public or working as part of a team should not be a critical function of his job responsibilities. The claimant is limited to routine, unskilled work.

5. The claimant is capable of performing past relevant work as a store laborer (Dictionary of Occupational Titles, or DOT Job Code #922.687-058). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965). The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

R. at 13-18.

The Commissioner argues Plaintiff cannot satisfy Listing 12.05(B) or (C) because he has failed to present a valid IQ score within the applicable ranges, and has failed to prove that he suffers from deficits in adaptive functioning. (See doc. no. 13, pp. 5-7.) Plaintiff contends that the ALJ erred by refusing to consider the IQ score of 58 obtained by Dr. Marvin Long, a consulting psychologist, shortly after the hearing. Plaintiff contends this score would satisfy Listing 12.05(B) if valid, and that there is substantial evidence of deficits in adaptive functioning. (See doc. no. 12, p. 14.)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145

(11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d

4

1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. The Criteria for Listing 12.05(B) and (C).

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Wilkinson *ex rel*. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly sub average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment

before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

The criterion of 12.05(B) is met when a claimant presents "a valid verbal, performance, or full scale IQ of 59 or less." Id. Alternatively 12.05(C) states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. A claimant generally meets the Listing 12.05(C) criteria when he, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).

### B. The ALJ Failed to Develop a Full and Fair Record Regarding Plaintiff's IQ Scores.

At the hearing, the ALJ rejected as invalid a full scale IQ score of 44 obtained by consultative examiner Dr. John C. Whitley, citing in support Dr. Whitley's report that the score was an underestimation of Plaintiff's true ability because Plaintiff did not give full effort during the examination. R. at 16. Dr. Whitley conducted his psychological evaluation of Plaintiff on November 3, 2011. R. at 277. Dr. Whitley noted that Plaintiff had a few

6

decayed teeth, could not state the day of the week or the month, could only recite the days of the week forwards but not backwards, had no ability to interpret proverbs, and could not spell the word "world." Id. Dr. Whitley assessed Plaintiff's IQ at 44, but opined that the score was not a true estimation of Plaintiff's abilities because of poor effort. Id. Dr. Whitley also opined that (1) Plaintiff is "most likely limited in regard to his intellectual and academic abilities"; and (2) his "ability to manage finances and maintain appointments is most likely limited." Id.

In light of the ALJ's decision to reject Dr. Whitley's IQ score as invalid, the ALJ gave Plaintiff seven days after the hearing, until June 12, 2013, to submit supplemental evidence of Plaintiff's IQ score. R. at 47. On June 14, 2013, just nine days after the hearing but two days after the ALJ's deadline, Plaintiff notified the ALJ of a supplemental psychological evaluation and IQ testing to be conducted by Dr. Marvin Long, a consulting psychologist. R. at 298. Despite the absence of any valid IQ scoring in the record, the ALJ did not wait on Dr. Long, and instead issued the unfavorable decision on June 18, 2013, thirteen days after the June 5, 2013 hearing and only four days after Plaintiff filed his notice. R. at 18.

Three weeks after the decision, Dr. Long evaluated Plaintiff on July 10, 2013, and reported a full scale IQ score of 58. R. at 304. Plaintiff submitted Dr. Long's evaluation to the Appeals Council, which added the evaluation to the record, R. at 5, but denied review of Plaintiff's case. R. at 1. When the Appeals Council denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. §

7

405(g). Plaintiff then filed this civil action requesting reversal of the adverse decision.

A claimant has the burden of proving his disability and is responsible for providing evidence in support of his claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Nevertheless, the ALJ has a duty to develop a full and fair record. Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984); George v. Astrue, 338 F. App'x 803, 805 (11th Cir. 2009); Jenkins v. Colvin, No. CA 2:12-00465-N, 2013 WL 3465190, at *3 (S.D. Ala. July 10, 2013) (collecting cases). The ALJ has a duty to develop a record that contains sufficient evidence to make an informed decision. Ingram, 496 F.3d at 1269. When deciding whether remand is appropriate for development of the record, the Court should consider whether there are evidentiary gaps resulting in unfairness or clear prejudice. Salazar v. Comm'r of Soc. Sec., 372 F. App'x 64, 67 (11th Cir. 2010).

Because the ALJ did not have the benefit of an accurate IQ score, the record was incomplete regarding an issue of primary importance. The ALJ should have left the record open to consider Dr. Long's psychological examination of Plaintiff and IQ score of 58. See, e.g. Rease v. Barnhart, 422 F. Supp.2d 1334, 1375 (N.D. Ga. 2006) (finding failure to fully and fairly develop the record as to claimant's medical and psychological records). Plaintiff's request for additional IQ testing, and Dr. Long's IQ scoring of 58, is supported by Plaintiff's school records, work history, and daily living, all of which at least suggest Plaintiff meets either Listing 12.05(B) or (C).

Plaintiff was not in regular high school classes, but instead he was in the special education program where he routinely made Cs and Ds. R. at 145-46. In the tenth grade,

Plaintiff scored in the 1st percentile on the PSAT/NMSQT. R. at 31, 147. This is not an anomaly as the record is replete with standardized test scores at the very bottom throughout elementary school, middle school, and high school. R. at 147, 304. Consistent with Plaintiff's poor academic performance is Plaintiff's poor work performance. Plaintiff worked for the Easter Seals, an employer of the handicapped, placing bar code stickers on American flags. R. at 31. Although Plaintiff worked for Kmart and Farmer's Furniture, those jobs entailed unskilled manual labor, and he lost both of these jobs because his supervisors found him to be "too slow." R. at 34.

The severe nature of Plaintiff's mental limitations is also evident in the description of him provided by Ms. Berneda Darrisaw, a family friend who has known Plaintiff for twenty years and spends two to three hours a day helping him. R. 198. Ms. Darrisaw reported that Plaintiff does not groom himself regularly, needs constant reminders to check his hygiene, cannot make meals aside from sandwiches, becomes easily confused when counting change, and does not have the ability to handle money. R. at 203. Plaintiff tries to cook, Ms. Darrisaw reports, but has almost set the house on fire at least three times because he "leave[s] the [kitchen to] go lie down." R. at 201.

According to Dr. Long, Plaintiff has problems handling money, acts without thinking, does not listen, does not complete activities, and has poor ability with tasks involving sustained attention, short term memory, and concentration. R. at 301-05. In addition, Dr. Long found that Plaintiff presently reads at only a second grade level, spells at a first grade level, and performs math in the fifth percentile of people his same age. R. at 304. Plaintiff's IQ score of

58, placed him in the .6 percentile. R. at 302-03. Dr. Long opined that the IQ score was valid and Plaintiff's effort was sufficient. R. at 302. Based on this score, Dr. Long diagnosed Plaintiff with mild mental retardation. R. at 306.

Because the ALJ did not consider Dr. Long's evaluation, the ALJ lacked essential information and did not make an informed decision. As the record stands now, there is an obvious evidentiary gap, and the Court finds that the ALJ failed to develop a full and fair record.

### C.     The Appeals Council Erred When it Denied Review.

Plaintiff asserts that if the Appeals Council had properly considered the IQ test from Dr. Long's evaluation, Plaintiff would have met Listing 12.05(B) or (C), requiring a remand to the ALJ. (See doc. no. 11, pp. 12, 15.) Under Eleventh Circuit law, "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). In other words, when the Appeals Council denies review despite the submission of additional evidence, the determinative inquiry is whether Plaintiff has submitted "new, material, chronologically relevant evidence" to the Appeals Council that "renders the decision of the [ALJ] to deny benefits unsupported by substantial evidence." Id. at 1261, 1266. "'New' evidence is evidence that is non-cumulative, and 'material' evidence is evidence that is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" Robinson v. Astrue, 365 F. App'x 993, 996 (11th Cir. 2010) (quoting Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987)). Here,

Dr. Long's report is both new and material, and there is a reasonable probability that it would change the ALJ's determination that Plaintiff does not meet listing 12.05(B) or (C).

## IV. CONCLUSION

Because the ALJ's finding that Plaintiff did not meet Listing 12.05(B) or (C) was not supported by substantial evidence, and because the ALJ did not develop a full and fair record regarding Plaintiff's IQ scores, this case should be remanded to the Commissioner for further consideration. The Court thus **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 30th day of December, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA